UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joan Paul ALCIVAR DE LA CRUZ,<br><br>　　　　　　　　*Petitioner*,<br><br>v.<br><br>William P. JOYCE, in his official capacity as Deputy Field Office Director of New York, Immigration and Customs Enforcement; Kristi NOEM, in her official capacity as Secretary of Homeland Security; and Pamela BONDI, in her official capacity as Attorney General of the United States,<br><br>　　　　　　　　*Respondents*. | Case No.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>**ORAL ARGUMENT REQUESTED** |

## INTRODUCTION

Joan Paul Alcivar De La Cruz is a 28-year-old man from Ecuador, who was, upon information and belief, Released on Recognizance into the United States on or around April 4, 2024. On June 25, 2025, Joan was forcibly arrested by the Department of Homeland Security (DHS) after attending a hearing in immigration court. Notwithstanding the fact that Joan had filed a timely application for asylum and the fact that the Immigration Judge had scheduled a subsequent hearing for Joan, immediately after leaving the Immigration Judge's courtroom, Joan was encircled by DHS agents without explanation and detained. He was subsequently subjected to days of overcrowded imprisonment in the federal building at 26 Federal Plaza. Joan is currently married to a U.S. citizen who, at the time of his arrest, was pregnant; she subsequently miscarried their child due in part to the stress of his detention.

There have not been—nor have Respondents alleged any—changes since Joan was initially released on his own recognizance from detention. As his proceedings were not dismissed, he remains procedurally in *exactly* the same posture as when he was initially released: in removal proceedings before an immigration judge pursuant to Section 240 of the Immigration and Nationality Act. Moreover, there have been no changed circumstances as to whether Joan is a flight risk or danger to the community. On the contrary, Joan has established strong ties to the community and complied with his legal obligations. Since entering the United States, Joan married his U.S. citizen wife—who was pregnant on the date of Joan's arrest but subsequently miscarried in part to the stress of Joan's detention—and caring for his two-year-old U.S. citizen stepdaughter. Upon information and belief, he has never been arrested or charged by any law enforcement entity in the United States or any other country.

Joan's unlawful and continued detention pursuant to DHS's policy—without any individualized determination as to why detention is appropriate—has caused immense and ongoing harm to Joan, his family, and his community. Joan brings this petition to seek immediate release.

## JURISDICTION

1. This action arises under the Constitution of the United States and the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*

2. This Court has subject matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus), 28 U.S.C. § 1331 (federal question), and Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause). Under 8 U.S.C. § 1252(e)(2), this Court has habeas authority to determine whether Petitioner was ordered removed under 8 U.S.C. § 1225(b)(1).

3. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 *et. seq.*, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

4. Venue is proper because at the time of filing, Petitioner was detained at 26 Federal Plaza in New York, New York, which is within the jurisdiction of this District. *See Rumsfeld v. Padilla,* 542 U.S. 426, 441 (2004) (citing *Ex Parte Endo*, 323 U.S. 283 (1944)).[1]

5. Venue is proper in this District because Respondents are officers, employees, or agencies of the United States and a substantial part of the events or omissions giving rise to her claims occurred in this District.

## REQUIREMENTS OF 28 U.S.C. § 2243

6. The Court must grant the petition for writ of habeas corpus or issue an order to show cause (OSC) to the respondents "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Court must require respondents to file a return "within *three days* unless for good cause additional time, not exceeding twenty days, is allowed." *Id.* (emphasis added).

7. Courts have long recognized the significance of the habeas statute in protecting individuals from unlawful detention. The Great Writ has been referred to as "perhaps the most important writ known to the constitutional law of England, affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added).

---

[1] As of 4 pm on July 2, 2025, the ICE detainee locator showed Joan as detained in New York, and the Current ICE Facility as "Call Field Office." When he spoke with his wife on the morning of July 2, Joan indicated that he was being held at 26 Federal Plaza in New York, New York.

## **PARTIES**

8. Petitioner is lawfully present as an applicant for asylum, withholding of removal, and protection under the Convention Against Torture. Petitioner was detained by ICE at 26 Federal Plaza, New York, New York 10278. He is in the custody, and under the direct control, of Respondents and their agents.

9. Respondent William P. Joyce is named in his official capacity as the Deputy Field Office Director of the New York City ICE Field Office within DHS. In this capacity, he is responsible for the administration of immigration laws and the execution of detention and removal determinations and is a custodian of Petitioner. Respondent Joyce's address is New York City ICE Field Office, 26 Federal Plaza, 9th Floor, Suite 9-110, New York, New York 10278.

10. Respondent Kristi Noem is named in her official capacity as the Secretary of the Department of Homeland Security. In this capacity, she is responsible for the administration of the immigration laws pursuant to Section 103(a) of the INA, 8 U.S.C. § 1103(a) (2007); routinely transacts business in the Southern District of New York; is legally responsible for pursuing any effort to detain and remove Petitioner; and as such is a custodian of Petitioner. Respondent Noem's address is U.S. Department of Homeland Security, 2707 Martin Luther King Jr. Ave. SE, Washington, DC 20528-04855.

11. Respondent Pamela Bondi is named in her official capacity as the Attorney General of the United States. In this capacity, she is responsible for the administration of the immigration laws as exercised by the Executive Office for Immigration Review ("EOIR"), pursuant to 8 U.S.C. § 1103(g). She routinely transacts business in the Southern District of New York and is legally responsible for administering Petitioner's removal and custody proceedings and for

the standards used in those proceedings. As such, she is the custodian of Petitioner. Respondent Bondi's office is located at the United States Department of Justice, 950 Pennsylvania Avenue, N.W., Washington, DC 20530.

## STATEMENT OF FACTS

12. Petitioner is a 28-year-old citizen of Ecuador. He timely sought asylum in the United States as a result of the harm he experienced as a cooperating witness against a gang member.

13. Upon information and belief, Joan was then released from detention on his own recognizance on or about April 4, 2024. His case was docketed with the New York City – 26 Federal Plaza Immigration Court on May 14, 2024.

14. On February 4, 2025, Joan filed timely a *pro se* application for asylum with the immigration court, detailing his fear of removal to Ecuador.

15. Following his release into the United States, Joan moved to New York City and married his U.S. citizen wife on May 6, 2025.

16. On June 25, 2025, Joan had his first immigration court appearance at 26 Federal Plaza.

17. During his hearing, Joan explained to Immigration Judge Theodora Kouris that he needed time to obtain an attorney. Immigration Judge Kouris acknowledged that Joan had applied timely for asylum and that he was married to a U.S. citizen. Immigration Judge Kouris set a date of March 18, 2026 for Joan to return to litigate his asylum claim.

18. When Joan left the courtroom, he was immediately apprehended by ICE officers. He was not informed why he was being arrested. Upon information and belief, aside from the June 25, 2025 apprehension by ICE, and initial detention at the border, Joan has not had any contact with law enforcement since entering the United States.

19. Joan's U.S. citizen wife was present for his hearing and his subsequent arrest.

20. In detention, Joan has suffered emotionally. Joan's wife was in her first trimester of pregnancy when Joan was detained and subsequently miscarried their child due in part to the stress of Joan's detention.

21. Joan's family—his wife and two-year-old stepdaughter—are suffering the longer he is detained. His wife is overcome with grief and extreme panic and cries throughout the day. Joan knows about these challenges stemming from his arrest, and it adds to his emotional distress.

22. Joan's health has significantly declined in detention. Joan was defecating blood and as a result, was hospitalized at New York-Presbyterian Lower Manhattan Hospital and released back to 26 Federal Plaza, New York, NY 10278 where he is still detained.

## LEGAL FRAMEWORK

23. Since mid-May 2025, the DHS has been employing a new campaign by which counsel for DHS moves to dismiss the cases of noncitizens who have been in the United States for under two years in Immigration Court to instead immediately pursue expedited removal.

24. ICE officers waiting in lobbies, hallways, and elevator wells in Immigration Court buildings arrest individuals leaving their hearings. Initially, this was only upon dismissal to invoke expedited removal, but now apparently is targeting everyone, regardless of how the motion to dismiss is adjudicated.

25. The ongoing civil arrests at immigration courts by Respondents stem from a significant change in policy and practice. On April 27, 2021, Respondents issued a memorandum titled "Civil Immigration Enforcement Actions in or near Courthouses." That memo strictly limited civil immigration enforcement in or near courthouses to four specific circumstances: (1) national security threats; (2) imminent risk of death, violence, or physical harm; (3) hot

pursuit of public safety threats; or (4) imminent risk of evidence destruction in criminal cases. Moreover, absent hot pursuit, ICE could only make civil arrests of public safety threats where no safe alternative location existed or with senior-level pre-approval. The memo explicitly covered immigration courts, and one of the core rationales underlying this policy was that "[e]xecuting civil immigration enforcement actions in or near a courthouse may chill individuals' access to courthouses, and as a result, impair the fair administration of justice."

26. This framework underwent a fundamental transformation on January 20, 2025, when Respondents rescinded the April 2021 Memo and issued new interim guidance. The guidance was finalized on May 27, 2025. In or around May 21, Respondents built upon this memo by initiating a policy of indiscriminate detentions at immigration courts around the country. The policy proceeds in two parts: first, Respondents move to dismiss removal proceedings for the purpose of placing the non-citizen into expedited removal proceedings. Then, irrespective of the outcome of that motion, Respondents detain individuals as they leave court. No individualized custody review—considering, inter alia, the disposition of the motion to dismiss; pending applications for relief; or other equitable factors such as age, health, or caretaking responsibilities—occurs.

## CLAIMS FOR RELIEF

**COUNT ONE**
**VIOLATION OF THE DUE PROCESS CLAUSE**
**OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
**SUBSTANTIVE DUE PROCESS**

27. The allegations in the above paragraphs are re-alleged and incorporated herein.

28. Joan is being detained without cause and in violation of his Constitutional right to Due Process under the Fifth Amendment.

29. The government's ongoing detention of Joan is unjustified and unlawful.

30. The goals of immigration detention are to "ensur[e] [his] appearance ... at future immigration proceedings," and to "[p]revent[] danger to the community." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Neither goal is served by Joan's detention.

31. Joan was detained by ICE at his immigration proceedings, demonstrating that there was no need for him to be detained to ensure his presence at those proceedings. His very presence in the Immigration Court at the time of his detention demonstrated that he was willing and able to attend his immigration proceedings.

32. Moreover, his detention jeopardizes Joan's ability to gather the evidence needed to equitably pursue his immigration relief.

33. The Due Process Clause guarantees detained immigrants the right to be detained in a safe situation, free from punitive conditions of confinement. *See* U.S. Const. amend. V.

34. Respondents' failure to adequately protect Joan from these punitive conditions, or release him from detention altogether, violates his due process rights.

35. Joan has no adequate remedy at law, as he seeks immediate release and may be ineligible for bond pursuant to *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025).

36. For these reasons, Petitioner's detention violates the Due Process Clause of the Fifth Amendment.

## COUNT TWO
## VIOLATION OF THE DUE PROCESS CLAUSE
## OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION
## PROCEDURAL DUE PROCESS

37. The allegations in the above paragraphs are realleged and incorporated herein.

38. Joan is being detained without cause and in violation of his Constitutional right to Due Process under the Fifth Amendment.

39. The Procedural Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of a protected interest without notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

40. Respondents provided Joan with no notice or opportunity to be heard prior to arresting and detaining him.

41. Respondents have offered Joan no meaningful opportunity to be heard or challenge his detention since detaining him.

42. Joan has no adequate remedy at law, as he seeks immediate release and may be ineligible for bond pursuant to *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025).

43. Joan's detention thereby deprives him of his rights to Due Process under the Fifth Amendment of the United States Constitution.

## COUNT THREE
## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

44. The allegations in the above paragraphs are realleged and incorporated herein.

45. The Administrative Procedure Act prohibits agency action that is arbitrary and capricious. 5 U.S.C. § 706(2)(A). An action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

46. Respondents' courthouse arrest policy, whereby it indiscriminately detains individuals present in the U.S. for under two years irrespective of the individual circumstances in their case, is arbitrary and capricious. This campaign is the product of an abrupt shift in agency policy around courthouse arrests. In 2021, Respondents promulgated a policy against such arrests which recognized that conducting courthouse arrests may cause noncitizens to fear attending their court hearings, which in turn would negatively impact the administration of justice and the integrity of those proceedings. But in May 2025, Respondents suddenly shifted their policy—without discussing or addressing the chilling effect that animated their 2021 policy. The shift also failed to address another relevant factor: by failing to consider individualized circumstances, the policy causes individuals who pose neither danger nor flight risk to be detained.

47. Joan has no other adequate remedy at law. Even if he is released, so long as Respondents maintain this ongoing courthouse detention campaign, he may be subjected to it at any of his future hearings.

48. By detaining Joan without any consideration of his individualized facts and circumstances, and without explaining the reasons for their abrupt shift in policy, Respondents have violated the APA.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court grant the following:

1) Assume jurisdiction over this matter;
2) Order Respondents to show cause why the writ should not be granted within three days and set a hearing on this Petition within five days of the return, as required by 28 U.S.C. § 2243;

3) Enjoin Respondents from transferring Joan from the jurisdiction of this District pending these proceedings;

4) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment;

5) Declare that Respondents' actions violate the Administrative Procedure Act;

6) Issue a Writ of Habeas Corpus ordering Respondents to release Joan Paul Alcivar De La Cruz immediately;

7) Award reasonable attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412; and

8) Grant any further relief this Court deems just and proper.

Respectfully submitted,

/s/Melissa Lim Chua
Melissa Lim Chua
Sadie Casamenti
Kate Fetrow
Diana Rosen

*Pro Bono Counsel for Petitioner*

Date: July 2, 2025